NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0008n.06

No. 21-3157

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jan 05, 2023
DEBORAH S. HUNT, Clerk

CELVIN BUESO-MARADIAGA,

    Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS

OPINION

Before: KETHLEDGE, READLER, and MURPHY, Circuit Judges.

KETHLEDGE, Circuit Judge. Celvin Bueso-Maradiaga, a citizen of Honduras, petitions for review of the denial of his application for asylum and other relief. Bueso-Maradiaga argues that, if he returns to Honduras, the man who killed his uncle ten years ago will kill him as well. Substantial evidence supports the immigration judge's decision to the contrary, however, so we deny the petition.

I.

According to Bueso-Maradiaga, a man named "Jose" has sought revenge against his family since 1999, when Bueso-Maradiaga's uncle Cesar survived a bus shooting that took the life of Jose's son. Jose blamed Cesar for the child's death and tried to kill Cesar in retaliation soon after the shooting. When that failed, Jose began threatening Cesar and Cesar's family.

Cesar eventually escaped to the United States, but Jose's threats continued. Then, in 2010 or 2011, Cesar returned to Honduras, and Jose found him. Jose asked Cesar to sell drugs, and when Cesar refused, Jose had him killed.

Even after Cesar's death, Jose continued to threaten the family. One brother, Bueso-Maradiaga's uncle Marco, filed a police report saying that the man who killed Cesar was threatening his life. Marco then temporarily moved to Mexico out of fear, and he later heard that "the people who were looking for him killed another guy thinking the victim was him." Jose's associates also questioned Bueso-Maradiaga's grandfather about the location of Marco and Bueso-Maradiaga's father. At no point, though, have Jose or his associates actually harmed another member of Cesar's family—most of whom still live in Honduras.

As for Bueso-Maradiaga, he lived in Honduras for nearly 16 years, and Jose never threatened him specifically. Yet Bueso-Maradiaga fled Honduras because, he says, he feared Jose. Bueso-Maradiaga entered the United States illegally in October 2016, and the Department of Homeland Security soon charged him with being subject to removal. He was then released into the custody of his father, who lives in the United States.

Bueso-Maradiaga later conceded removability and applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). An immigration judge held a removal hearing, where Bueso-Maradiaga and his father testified to the events detailed above. Bueso-Maradiaga said that he is afraid to go back to Honduras because Jose "can find out" and kill him, and that the police will not do anything to protect him.

The IJ found that both Bueso-Maradiaga and his father were credible, but that Bueso-Maradiaga had not shown that his fear of "persecution" in Honduras is reasonable. In the IJ's view, Bueso-Maradiaga lacked evidence of past persecution; and though members of Bueso-

Maradiaga's family have been threatened by Jose, he has not harmed any of them. The IJ therefore denied relief and entered an order of removal. A single-member panel of the Board of Immigration Appeals affirmed without opinion.

This petition for review followed.

## II.

Where, as here, the Board affirmed the IJ's decision without a written opinion, we review the IJ's decision directly. *See Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004). We review questions of law de novo and uphold the IJ's factual findings unless the evidence compels a contrary conclusion. *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 501–02 (6th Cir. 2007).

Bueso-Maradiaga first challenges the IJ's denial of his application for asylum. To qualify for asylum, an applicant must show that he "suffered actual past persecution" or has a "well-founded fear of future persecution." *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004). A fear of persecution is "well-founded" so long as it is "both subjectively genuine and objectively reasonable." *Akhtar v. Gonzales*, 406 F.3d 399, 404 (6th Cir. 2005) (cleaned up). The subjective component "turns largely upon the applicant's own testimony and credibility." *Id.* (cleaned up). The objective component requires the applicant to prove that there is either (a) "a reasonable probability" that he "will be singled out individually for persecution" or (b) "a pattern or practice of persecution of an identifiable group, to which the alien demonstrates he belongs, such that the alien's fear is reasonable." *Id.* (cleaned up).

Bueso-Maradiaga argues that the IJ erred when it found that his fear of future persecution is not objectively reasonable. Specifically, he says the IJ overlooked the "constant threats" made against his family, which in his view show "a reasonable possibility that he would be harmed on his return." But the IJ did acknowledge that Jose has threatened the family since 1999. *See* A.R.

76. The IJ also stressed, however, that most of Bueso-Maradiaga's family still lives in Honduras, and in the 10-plus years since Jose had Cesar killed, none have been harmed. True, the IJ did not mention that Jose's associates mistakenly killed a man thought to be Bueso-Maradiaga's uncle Marco. But an IJ need not refute every piece of evidence offered by a petitioner. *See Stserba v. Holder*, 646 F.3d 964, 978 (6th Cir. 2011). Moreover, that incident occurred back in 2014 or 2015, and the same uncle has since returned to Honduras and lives there unharmed. On this record, substantial evidence supports the IJ's determination that Bueso-Maradiaga has not shown a "reasonable probability" that he will be targeted upon return. *See Ordonez v. Holder*, 446 F. App'x 750, 753 (6th Cir. 2011).

Nor does the evidence show a "pattern or practice of persecution" against "male relatives" of Bueso-Maradiaga's uncle Cesar. Threats alone constitute persecution only in "exceptional" cases. *Japarkulova v. Holder*, 615 F.3d 696, 701 (6th Cir. 2010). And Jose's vague and unfulfilled threats to Bueso-Maradiaga's family are not "imminent or concrete" enough to qualify. *Li v. Attorney General*, 400 F.3d 157, 165 (3d Cir. 2005). Nor do they reach the "extreme" level of persecution required to show "a pattern or practice." *Dikeh v. Rosen*, 841 F. App'x 823, 826 (6th Cir. 2021). The record thus does not compel us to reverse the IJ's finding that Bueso-Maradiaga failed to establish a well-founded fear of future persecution.

Bueso-Maradiaga also challenges, albeit briefly, the IJ's denial of his applications for withholding of removal and protection under the CAT. But Bueso-Maradiaga relies on the same evidence for these claims as he did for his asylum claim; and the standards for these claims are more stringent than the standard for asylum. *Ceraj v. Mukasey*, 511 F.3d 583, 594 (6th Cir. 2007). Thus, because the record provides substantial evidence to support the IJ's conclusion that

4

Bueso-Maradiaga is ineligible for asylum, the record necessarily supports the IJ's rejection of his withholding of removal and CAT claims as well. *Id.*

Finally, Bueso-Maradiaga contends that the Board should have referred his case to a three-member panel, and that it erred when it affirmed the IJ's decision without opinion. But his arguments rest on the premise that the IJ's decision was not supported by substantial evidence. And for the reasons explained above, we disagree. Bueso-Maradiaga has therefore failed to show that the Board acted arbitrarily or capriciously. *See Hassan v. Gonzales*, 403 F.3d 429, 438 (6th Cir. 2005); *Vasha v. Gonzales*, 410 F.3d 863, 876 (6th Cir. 2005).

\* \* \*

Bueso-Maradiaga's petition is denied.